UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HealthCall of Detroit, Inc.,

     Plaintiff,

v.                            Case No. 22-10797

State Farm Mutual Automobile Insurance     Sean F. Cox
Company,                         United States District Court Judge

     Defendant.
_____/

## OPINION & ORDER
## DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND ADDRESSING RELATED MOTIONS AND FILINGS

Plaintiff HealthCall of Detroit, Inc. ("HealthCall") is a healthcare provider that filed this action against Defendant State Farm Mutual Automobile Insurance Company ("State Farm") on April 14, 2022.  State Farm provides no-fault automobile insurance coverage to two of HealthCall's patients.  HealthCall filed this suit, alleging that State Farm did not fully pay its invoices for care that it recently provided to those two patients.

HealthCall's Amended Complaint is the operative complaint and it asserts three different claims, all of which are related to recent amendments to Michigan's No-Fault Act.  In Counts I and II, HealthCall asserts its primary position in this case – that it is a medical provider pursuant to Mich. Comp. Laws § 500.3157(2), *not* § 3157(7).  It asserts Count III in the alternative, asserting that *if* it is found to be a § 3157(7) provider, *then* that section cannot be enforced against it because it is an unconstitutional regulatory taking, because the reimbursement rate in that section is too low.

1

The matter is currently before the Court on HealthCall's Motion for a Preliminary Injunction. The Court held an evidentiary hearing as to this motion on July 18, 2022, that was continued on July 25, 2022. For the reasons that follow, the Court DENIES Plaintiff's motion because the Court concludes that HealthCall has not met its burden of showing that it is entitled to its requested preliminary injunction.

As a threshold issue, the preliminary injunction sought by HealthCall in this case is impermissibly vague, overly broad, and purports to bind non-parties. These are fatal defects.

Moreover, HealthCall seeks preliminary injunctive relief based upon Count III alone, without any discussion or analysis of Counts I and II – that set forth its *primary position* in this case. Count III is pleaded in the alternative to Counts I and II and only comes into play if HealthCall does not prevail on Counts I and II, and it is found to be a Section 3157(7) provider.

In addition, HealthCall also has to show that State Farm (a private party) should be deemed a "state actor" for purposes of HealthCall's constitutional taking claim in this case, brought under 42 U.S.C. § 1983. But it gave that threshold issue remarkably short shrift, addressing it in a single footnote to its brief, and then waiting until its reply brief to substantively address it.

Even if State Farm is considered a state actor, HealthCall has some other hurdles it is unlikely to clear as to the merits of its takings claim. That is because there is a long line of authority standing for the proposition that there can be no regulatory taking where a service provider voluntarily participates in a price-regulated program or activity.

If it cannot show a substantial likelihood as to the merits of its takings claim, then HealthCall cannot rely on a presumption of irreparable injury by virtue of a constitutional

2

violation and would have to show irreparable injury in some other manner.  A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.  Here, HealthCall tries to avail itself of an exception to the general rule, by arguing that its impending financial ruin, absent the requested preliminary injunction, constitutes an irreparable injury.  HealthCall has not made the required evidentiary showing as to that assertion.

## BACKGROUND

HealthCall is a healthcare provider that filed this action against State Farm on April 14, 2022.  State Farm provides no-fault automobile insurance coverage to two of HealthCall's patients, K.D. and A.M.  HealthCall filed this suit, alleging that State Farm did not fully pay its recent invoices for care provided to these two patients.

This case is in federal court based upon both diversity jurisdiction and federal-question jurisdiction.  The operative complaint is HealthCall's Amended Complaint, filed on May 11, 2022.  It asserts the following three counts: 1) "Count I – Violation Of The Michigan No-Fault Act, M.C.L. 500.3103 *et seq*."; 2) "Count II – Declaratory Judgment Action"; and 3) "Count III – Unconstitutional Taking In Violation Of Fifth And Fourteenth Amendments."

### Summary Of Relevant Factual Allegations In Operative Complaint

HealthCall is a community healthcare organization that provides both in-home private duty nursing services and community living support/home health aide as well as in-clinic behavioral therapy, speech and occupational therapy, and diagnostic services.  (Am. Compl. at ¶ 7).  It provides a wide range of medical treatments and services.  (*Id*. at ¶ 8).  It serves patients from a diverse set of payor sources, including both private and public funders.  (*Id*. at ¶ 10).

3

State Farm provides no-fault automobile insurance coverage to two patients that HealthCall has cared for, K.D. and A.M.  HealthCall alleges that it has approximately forty other patients in its patient population whose insurance payor is a no-fault insurer.  (*Id*. at ¶ 13).

The Michigan No-Fault Automobile Insurance Act underwent revisions in 2019.  Under the prior version of the statute, "a medical provider's rate was reimbursable as long as it was 'reasonable and customary' but there was no pre-determined amount nor was there a set limit." (Am. Compl. at ¶ 40).  "The amended rates provision contains seven categories of rates, two of which are relevant to this lawsuit" – Section 3157(2) and Section 3157(7).  (*Id*. at ¶ 59).

Under Section 3157(2), " a medical provider is entitled to receive reimbursement for its services up to an amount that is equal to 200% of the Medicare rate for the same service."  (Am. Compl. at ¶ 60; *see* Mich. Comp. Laws § 500.3157(2)).

Conversely, under Section 3157(7), a medical provider is only eligible to receive a fraction of their prior reimbursement.  (Am. Compl. at ¶ 61; *see* Mich. Comp. Laws § 500.3157(7)).  "Thus, for medical providers who do not have an 'amount payable' for their services under Medicare, their reimbursement rates ***would plummet by 45%*** for July 2021-2022, by 46% in 2022-2023, ***and by 47.5%*** after July 2023, where it would remain."  (*Id*. at ¶ 62) (emphasis in original).

**HealthCall's Primary Position In Counts I & II**

Notably, HealthCall's Amended Complaint affirmatively states that its "position is that [HealthCall] is a medical provider pursuant to Section 3157(2), *not Section 3157(7)*."  (Am. Compl. at ¶ 119) (emphasis added).  HealthCall therefore alleges that it "should be reimbursed its full rate under Section 3157(2)" by State Farm.  (Am. Compl. at ¶ 120).

4

Thus, in Count I of its Amended Complaint, HealthCall alleges that the rates it charged State Farm for the care provided to K.D. and A.M. are compensable under Mich. Comp. Laws § 500.3157(2) and that State Farm violated the No-Fault Act by failing to reimburse it for those charges. HealthCall further alleges that State Farm has "never indicated that it disagree[s] with HealthCall's position that it was a medical provider whose reimbursement was governed by" Mich. Comp. Laws § 500.3157(2). (*Id*. at ¶ 117).

Count II of HealthCall's Amended Complaint is also based on its primary position – that HealthCall is a medical provider pursuant to Mich. Comp. Laws § 3157(2) – and "seeks a declaratory judgment that [HealthCall] is a medical provider entitled to reimbursement as set forth in Section 3157(2), not Section 3157(7)." (Am. Compl. at ¶ 162).

**HealthCall's Alternative Position In Count III**

In Count III, HealthCall alleges, in the alternative, that *"if* it was found to be a Section 3157(7) provider, **then that section** cannot be enforced because it is an unconstitutional taking." (Am. Compl. at ¶ 120) (italics in original, bolding added for emphasis). It contends that, if it is found to be a medical provider governed by Section 3157(7), then the drastic decrease in revenue (nearly half of what it used to receive) would be "unsustainable and would force HealthCall to operate at a loss (and eventually, become insolvent)." (Am. Compl. at ¶ 64).

Count III of its Amended Complaint, therefore argues, in the alternative to both Counts I and II, that "Section 3157(7) is an unconstitutional confiscatory rate." (Am. Compl. at 38). It is Section 3157(7) alone that is the subject of Count III. (*See* Am. Compl. at ¶¶ 168, 171, 174, and

177).[1]

**Requested Relief**

In this action, HealthCall named State Farm as the only Defendant.  No other insurance

companies are Defendants in this case.  HealthCall did not sue the State of Michigan to

challenge the constitutionality of the Michigan statute.[2]

HealthCall's Amended Complaint states that HealthCall seeks the following relief in this

case against State Farm:

RELIEF REQUESTED

WHEREFORE, HealthCall prays that, pursuant to M.C.L. § 500.3101, *et.*
*seq*., this Court enter judgment in HealthCall's favor and against State Farm for
the total amount due and owing to HealthCall for the services rendered to patients
K.D. and A.M., which totals $103,998.97, plus (1) No-Fault penalty interest
pursuant to M.C.L. § 500.3142, (2) No-Fault attorney fees and costs pursuant to
M.C.L. § 500.3148, (3) such other relief as justice and fairness require;
Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201
and Fed. R. Civ. P. 57, Plaintiffs in good faith request that the Court *declare that*

---

[1] The Amended Complaint *does not* assert any kind of takings claim in relation to Section
3157(2) or Section 3157(8).  The Court notes this because, in its Motion for Preliminary
Injunction, HealthCall asserts that Section 3157 "leaves certain medical providers" with "a
confiscatory rate freeze under Sections 3157(2) and (8)."  (ECF No. 10 at 7).  In addition, the
heading on page 8 of its brief asserts that HealthCall has a strong likelihood of success because
the "government-mandated rate reduction *and freeze*" are a confiscatory taking.  (*Id*. at 8)
(emphasis added).  No confiscatory "rate freeze" claim is pleaded in HealthCall's operative
complaint.

[2] After filing this action, however, Plaintiff filed a "Notice of Constitutional Question,"
advising that it is challenging the constitutionality of a state statute, Mich. Comp. Laws §
500.3157, in this case.  (ECF No. 3).  HealthCall filed that Notice pursuant to Fed. R. Civ. P. 5.1,
which allows a state's attorney general to intervene in an action wherein the constitutionality of a
state statute is challenged.  Michigan Attorney General Dana Nessel has since filed a notice,
indicating that she *does not* intend to intervene in this case.  (ECF No. 13).

> *(i) HealthCall is a medical provider entitled to reimbursement under M.C.L.*
> *500.3157(2) and is not governed by M.C.L. 500.3157(7); or alternatively, (ii)*
> *declare that if HealthCall is a section (7) provider, that portion of the No-Fault*
> *Act, Section 3157(7), is unconstitutional in violation of the Fifth and Fourteenth*
> *Amendments to the United States Constitution; and*
>
> Pursuant to Fed. R. Civ. P. 65, enjoin the Defendant from enforcing an
> unconstitutional statute in derogation of HealthCall's constitutional rights.

(Am. Compl. at 39-40) (emphasis added).

**HealthCall's Motion For Preliminary Injunction**

Although its primary position is that HealthCall is a medical provider pursuant to Mich.

Comp. Laws § 3157(2) – and not a medical provider governed by § 3157(7) – its Motion for

Preliminary Injunction *is based exclusively on its alternative challenge* to § 3157(7) as a

confiscatory taking. (*See* Pl.'s Motion at iv, stating "Should the Court enter an injunction

preventing the application of M.C.L. 500.3157 because it is a confiscatory taking in violation of

the Takings Clause of the Fifth Amendment and the Due Process Clause of Fourteenth

Amendment?").

This Court held a Status Conference with the parties on May 19, 2022, to discuss the

Motion for Preliminary Injunction. Prior to that conference, the Court had HealthCall provide a

proposed preliminary injunction, so that the Court and State Farm could see precisely what

injunctive relief HealthCall is seeking in this motion. HealthCall did so.

This Court held another Status Conference with the parties on May 26, 2022. On that

same date, this Court issued an order setting forth the procedures and the filings that would be

permitted and considered by this Court in relation to the motion:

> This Court held a Status Conference with the parties on May 26, 2022 to
> discuss the pending Motion for Preliminary Injunction. The Court hereby
> **ORDERS** that:

1)      Defendant shall file its response to Plaintiff's Motion for Preliminary Injunction no later than **June 8, 2022 at 5:00 p.m.**;

2)      Plaintiff shall file any reply brief no later than **June 15, 2022, at 5:00 p.m.**;

3)      The Court shall hold an evidentiary hearing on **July 18, 2022**, beginning at **11:00 a.m.** and continuing on successive days as necessary;

 **IT IS FURTHER ORDERED** that, no later than July 5, 2022, at 1:00 p.m., each party shall file:

1)      a Witness List, that lists each witness that may be called at the evidentiary hearing, along with a short summary of the expected testimony, and an estimate of the length of the expected testimony, of each witness;

2)      an Exhibit List, listing each exhibit that may be presented at the evidentiary hearing; and

3)      Proposed Findings of Fact and Conclusions of Law, set forth in separately numbered paragraphs.

 **IT IS FURTHER ORDERED** that two (2) courtesy copies of each of the above filings shall be delivered to the Court on the dates that the filings are due.

 **IT IS SO ORDERED.**

(ECF) (emphasis in original).  The parties timely filed those materials.[3]

 The Court also ordered HealthCall to file its proposed order granting Plaintiff's Motion for Preliminary Injunction on the docket as an exhibit to its motion, so that it is part of the record.  HealthCall filed its requested preliminary injunction on July 6, 2022 (ECF No. 26) and it

_____

 [3]State Farm filed, as an exhibit to its response brief, a document titled "Request For Judicial Notice In Support Of Its Opposition To Plaintiff's Motion For Preliminary Injunction." (ECF No. 16-5).  In that request, State Farm asks this Court to "take judicial notice of an amicus curiae brief filed by the Director of the Michigan Department of Insurance and Financial Services in a case currently pending before the Michigan Court of Appeals, *Andary v. USAA Casualty Insurance Company Co."* (*Id*. at 1).  The Court declines to do so because, in addition to this request being improperly filed as an exhibit, that case does not involve the same issues as this case.

is the same proposed order that HealthCall submitted prior to the May 19th Status Conference.[4]

Pursuant to this Court's order, the briefing on the pending motion concluded on June 15, 2022. The evidentiary hearing materials were filed by the parties on July 5, 2022. [5]

**The Evidentiary Hearing**

This Court held an evidentiary hearing that began on July 18, 2022, and was continued on July 25, 2022.

At the beginning of the hearing, Plaintiff's counsel provided this Court with a binder that contained all of Plaintiff's proposed exhibits.

On July 18th, HealthCall called its primary witness, Joel Szirtes ("Szirtes"), HealthCall's Chief Executive Officer and its Chief Financial Officer.

There was a dispute concerning subpoenas that were issued to two of State Farm's insurance adjusters (Alex Fragrosa and Amy Harl), who HealthCall wished to call as witnesses at the hearing. The parties ultimately agreed[6] to have those two witnesses appear for the

---

[4]Without seeking leave to do so, on July 12, 2022, State Farm filed "objections" to Plaintiff's proposed preliminary injunction – although State Farm has had Plaintiff's proposed preliminary injunction since May 26, 2022. (ECF No. 29). Without seeking leave to do so, on July 15, 2022, Plaintiff filed a response to Defendant's objections. (ECF No. 37). The Court struck both of those unauthorized filings as the parties had ample opportunity to address all issues in the filings authorized by this Court.

[5]On July 7, 2022, Plaintiff filed a motion seeking leave to file "Supplemental Conclusion[s] Of Law In Response To Previously Unasserted Defense." (ECF No. 27). Plaintiff stated it wishes to submit this additional filing because State Farm asserted a new defense for the first time in its proposed findings of fact and conclusions of law – "that 'HealthCall has not sought payment under Michigan's Post-Acute Auto Injury Provider Relief Fund.'" The Court denied that motion as moot, noting that the Court does not intend to address any issues that were not properly raised during the briefing of the pending motion.

[6]As such, State Farm's Motion to Quash Plaintiff's Subpoenas (ECF No. 38 ) is denied as moot.

evidentiary hearing, via zoom, on July 25, 2022, and to allow State Farm to present its sole witness out of order on July 18, 2022.

Thus, on July 18th, State Farm called Gary Nayh ("Nayh"), a forensic accountant, as an expert witness. State Farm sought to elicit testimony from Nayh that payments pursuant to the fee schedules under the No-Fault Act will not result in HealthCall's financial ruin. (*See* ECF No. 30 at 1). During his testimony, however, Nayh testified that he is unable to offer such an opinion because he lacks some key documents that he would need to review and analyze before he could form an opinion on the issue. As such, Nayh provided no relevant opinion testimony.[7]

On July 25, 2022, HealthCall called Alex Fragrosa ("Fragrosa") and Amy Harl ("Harl") as witnesses.[8]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law, for purposes of the pending motion.

---

[7]Nevertheless, during the course of the evidentiary hearing, HealthCall made an oral motion to strike the testimony of Nayh, arguing that he is not qualified to offer expert testimony. It later filed a formal written motion asking the Court to strike his testimony (ECF No. 45), that has been briefed by the parties. Given this Court's conclusion that Nayh provided no relevant opinion testimony, the Court denies that motion as moot.

[8]At the beginning of the hearing on July 25, 2022, Plaintiff sought to introduce additional exhibits, that were not contained in the binder of proposed exhibits provided to the Court on July 18, 2022, and this Court declined to allow them.

## FINDINGS OF FACT[9]

HealthCall is a community healthcare organization that provides both in-home private duty nursing services and community living support/home health aide as well as in-clinic behavioral therapy, speech and occupational therapy, and diagnostic services.   It provides a wide range of medical treatments, including comprehensive behavioral services for families with children who have conditions such as autism.

It also provides in-home health care services for individuals who require that, including individuals who have been involved in motor vehicle accidents.  Those services are provided by various individuals employed by HealthCall, including registered nurses, licensed practical nurses, and home health aides.  The rates charged by HealthCall depend upon the patient being served and the level of care needed by that patient.

HealthCall is a family-owned and operated business.  Szirtes is HealthCall's Chief Executive Officer and its Chief Financial Officer.  His wife is HealthCall's general counsel, his brother is the Director of Operations, and his father is the Chairman of the Board.

HealthCall has been in business since 1987.  It is  dually-accredited by both the Community Health Accreditation Partner (CHAP) and Commission on Accreditation of Rehabilitation Facilities International (CARF).  It has approximately 250 employees but that number fluctuates.  Approximately 80% of its workforce is in direct patient care and the remaining 20% is administrative and clinical support.

HealthCall serves patients from a diverse set of payor sources, including both private and

---

[9]The Court includes here only the factual findings necessary for context and for the Court's rulings.

public funders.  HealthCall makes the decision as to whether it will accept a given patient.  It has

not serviced any Medicare patients in the past four years or so.  The same is true for workers

compensation patients. HealthCall is not required to take no-fault patients.

HealthCall currently serves approximately 200 patients across all service lines.

Approximately 25 of those patients are patients whose insurance payor is a no-fault insurer.[10]  It

appears that two of those no-fault patients are now deceased.  (*See* Pl.'s Ex. 1; 7/18/22 Hrg. Tr.

at 30).  In any event, only two of HealthCall's no-fault patients are insured by State Farm – K.D.

and A.M.

Its other no-fault patients are insured by other companies, including Allstate / Geico,

Farmers, Hanover/Citizens, Esurance, Farm Bureau, Titan/Nationwide, Liberty Mutual / Safeco,

Everst, and USAA.  (*See* Pl.'s Ex. 1).

Szirtes testified that HealthCall has filed lawsuits such as this one in "multiple courts."

(7/18/22 Hrg. Tr. at 57).  Some of those lawsuits were filed in this Court, against other insurance

companies. (*See eg.*, Case No. 22-10206 against Citizens and Case No. 21-12697 against

Farmers).

K.D. has been a patient of HealthCall since 2007.  K.D. sustained severe injuries in an

automobile accident, including a severe closed head injury and cognitive problems.  K.D. has a

court-appointed guardian and requires daily care from a home-health aide and monitoring by a

nurse supervisor.

HealthCall's records indicate that, with respect to the service dates from June 1, 2021 to

---

[10]HealthCall's May 11, 2022 First Amended Complaint alleged that "HealthCall has
approximately forty (40) other patients," in addition to K.D. and A.M, "whose insurance payor is
a No-Fault insurer."  (Am. Compl. at ¶ 13).

June 30, 2022, it has billed State Farm a total of $257,730.00 for K.D.'s care.  Szirtes testified

that HealthCall has not received any payment for services that were provided for K.D. in May or

June of 2022 and he does not know why.  As to the other service periods, State Farm did not pay

HealthCall's invoices in full. State Farm has paid HealthCall a total of $129,408.52 for K.D.'s

care from June 1, 2021 to June 30, 2022.  HealthCall contends that it is still owed $128,321.48

from State Farm for care provided to K.D. and that it is owed some no-fault penalty interest as

well.

Fragrosa is a claim specialist employed by State Farm.  He does not perform any work

for the State of Michigan or work in any sort of law enforcement. Fragrosa's job with State Farm

is to handle personal injury protection or medical payments coverage for State Farm's insureds.

He handles claims primarily in Michigan.  He is the adjuster who handles claims for K.D.'s care

and has done so since 2019.

Prior to July of 2021, State Farm did not pay the full amount of HealthCall's invoices for

K.D.'s care.  It paid less than the full amount of the invoices, in that a small percentage was

"taken off the top."

Fragrosa testified that he believes that State Farm has some discretion to pay more than

what is provided in the fee schedule set forth at Mich. Comp. Laws § 500.3157 and that the fee

schedule is a "guide" as to what is considered a reasonable charge.  But Fragrosa also testified

that, in reviewing claims, he is applying that fee schedule, if it is determined to be reasonable.

He testified that, as to invoices received by State Farm after July 1, 2021, he applied the fee

schedule to pay HealthCall roughly 55 cents on the dollar as to its invoices for K.D.'s care.

A.M. is a more recently-acquired no-fault patient. Szirtes testified that A.M. was referred

to HealthCall by another healthcare provider who discharged all of its no-fault patients due to having received reduced reimbursements.  A.M. has been HealthCall's patient since January of 2022.

A.M. sustained severe injuries in an automobile accident, is paralyzed, and has a G-tube for feeding.  A.M. requires a high level of daily care.  HealthCall's exhibits reflect that its first invoice for A.M.'s care was sent to State Farm on February 29, 2022, and that its most recent invoice was sent on July 6, 2022.  (Pl.'s Ex. 5).

HealthCall's Amended Complaint alleges that, despite having received monthly invoices and supporting documentation from it, "State Farm failed to *fully reimburse* HealthCall for the care and services it provided to Patient A.M."  (Am. Compl. at ¶ 36) (emphasis added).  At the evidentiary hearing, however, Szirtes testified that State Farm has *paid nothing* to HealthCall for A.M.'s care and that State Farm not has not explained why HealthCall is not getting paid for that patient's care.  HealthCall contends that it is now owed a total of $405,048.89 (exclusive of interest and penalties) for care provided to A.M.

Harl is a claims specialist employed by State Farm.  Like Fragrosa, Harl does not perform any work for the State of Michigan or work in any sort of law enforcement.  Her job with State Farm is to review and pay claims for State Farm's insureds.  She only handles claims in Michigan.

Harl is the Claims Specialist who handles invoices for care provided to A.M., one of State Farm's insureds.  Harl testified that she has not yet approved, or denied, any of HealthCall's invoices for A.M.'s care.

As to its two No-Fault patients that are insured by State Farm (K.D. and A.M.),

14

HealthCall's records show that it is now owed $543,000.00.

Szirtes testified that it is HealthCall's position that it is a Section 3157(2) provider and that it is to be reimbursed under that section and, therefore, the reimbursement provisions in Section 3157(7) do not apply to HealthCall.  (*See* 7/18/22 Hrg. Tr. at 63, 67-69).  Szirtes also testified that HealthCall sent State Farm and other insurers a letter stating so and asking them to notify HealthCall if they disagree.  Szirtes testified that no one did so.  (*Id*. at 47 & 68).

Szirtes testified that a number of things have been negatively impacting HealthCall's finances in the last few years, including inflation and the national labor shortage.  He testified that there has recently been an "astronomical increase" in wages in all industries, but specifically in health care.  Szirtes testified that the labor shortage impacts HealthCall's costs, in that overtime increases when the company does not have enough existing staff to meet its needs.

Szirtes testified that HealthCall is currently operating at a loss and that the business has not made a profit since July 1, 2021.

HealthCall has several service lines of business and its no-fault line of business is the only one that is currently not profitable for HealthCall.

If HealthCall is paid only half of the prior reimbursement rates that it was previously paid by no-fault insurers, HealthCall will not be able make a profit as to services provided to no-fault patients, given its operating and labor costs.

Not surprisingly, HealthCall has recently declined to take new no-fault patient referrals.

HealthCall is not at imminent risk of insolvency due to its outstanding invoices to State Farm for services provided to K.D. and A.M.

For a variety of reasons, HealthCall has not applied for relief from the Department of

Insurance and Financial Services Post-Acute Auto Injury Provider Relief Fund.

**ANALYSIS & LEGAL CONCLUSIONS**

As explained below, the Court finds that HealthCall has not met its burden of establishing that it is entitled to the preliminary injunction it seeks in this case.

**I.      The Standard Applicable To A Motion For Preliminary Injunction**

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted).

The movant bears the burden of demonstrating entitlement to the preliminary injunction sought, and this burden is a heavy one.  A preliminary injunction should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.  *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000).   The "'proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion' because a preliminary injunction is an extraordinary remedy." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not to maintain the status quo pending resolution of the case, but to obtain affirmative relief.  *See, eg.*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 34 (2d Cir. 1995); *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F.Supp. 1002, 1011 (N.D. Ohio 1997).  That is because "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2017).

16

When deciding whether to grant a preliminary injunction, this Court considers four factors: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent the injunction; 3) whether the injunction would cause substantial harm to others; and 4) whether the public interest would be served by the issuance of an injunction. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (citations omitted).

"When a party seeks a preliminary injunction on the basis of a potential constitutional violation," however, "the likelihood of success on the merits often will be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

## II.     The Preliminary Injunction HealthCall Requests Is Impermissibly Vague, And Overly Broad, And Purports To Bind Non-Parties.

As a threshold matter, this Court concludes that the preliminary injunction requested by HealthCall is impermissibly vague, and overly broad, and HealthCall impermissibly seeks to bind non-parties.

The requirements for the contents and scope of a proper injunction are set forth in Rule 65(d) of the Federal Rules of Civil procedure.   As to the contents of any preliminary injunction issued by a district court, the rule provides:

> (1) Contents. Every order granting an injunction and every restraining order must:
>       (A) state the reasons why it issued;
>       (B) *state its terms specifically*; and
>       (C) describe in reasonable detail—an not by referring to the complaint or other document—the act or acts restrained or required.

Fed. R. Civ. P. 65(d)(1) (emphasis added).

As the Supreme Court has explained, the specificity requirements of Rule 65(d) are not "mere technical requirements," and are "designed to prevent uncertainty and confusion on the

17

part of those faced with injunctive orders, and to avoid the possible founding of a contempt

citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

An injunction "should clearly let defendant know what he is ordered to do or not to do."

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001). Rule 65(d)'s

requirements are satisfied "only if the enjoined party can ascertain from the four corners of the

order precisely what acts are forbidden or required." *Petrello v. White*, 533 F.3d 110, 114 (2d

Cir. 2008). The Sixth Circuit has explained that:

> Rule 65(d)(1) serves two "important" functions: (1) "prevent uncertainty
> and confusion on the part of those faced with injunctive orders," and thus "avoid
> ... a contempt citation on a decree too vague to be understood"; and (2) enable "an
> appellate tribunal to know precisely what it is reviewing." *Id.* at 476-77, 94 S.Ct.
> 713. To that end, an injunction must be couched in specific and unambiguous
> terms, such that "an ordinary person reading the court's order [is] able to ascertain
> from the document itself exactly what conduct is proscribed." *Scott v. Schedler*,
> 826 F.3d 207, 211 (5th Cir. 2016); *see also Schmidt*, 414 U.S. at 476, 94 S.Ct.
> 713; *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir.
> 1984) (finding the term "discriminating" too general). An injunction order is
> typically vacated when it violates this standard.

*Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356,362 (6th Cir. 2022).

Fed. R. Civ. P. 65(d) also governs the persons or entities that can be bound by a

preliminary injunction issued by this Court:

> (2) Persons Bound. The order binds only the following who receive actual notice
> of it by personal service or otherwise:
>> (A) the parties;
>> (B) the parties' officers, agents, servants, employees, and attorneys; and
>> (C) other persons who are in active concert or participation with anyone
>> described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2).

This Court required HealthCall to submit a proposed preliminary injunction, so that the

Court and State Farm could see *precisely what injunctive relief HealthCall is seeking* in this

18

motion.  Plaintiff asks the Court to issue a preliminary injunction that would state as follows:

> This matter having come before the Court on Plaintiff HealthCall of Detroit Inc.'s Motion for a Preliminary Injunction (the "Motion"), and the Court being otherwise fully advised in the premises;
> IT IS HEREBY ORDERED that the Motion is granted in full and an injunction is hereby entered, and that any application or enforcement of M.C.L. 500.3157 is hereby enjoined on the grounds that [it] is a confiscatory taking in violation of the Takings Clause of the Fifth Amendment and the Due Process Clause of [the] Fourteenth Amendment.
> This is not a final order and does not end this case.

(ECF No. 26).

The preliminary injunction requested by HealthCall, by its terms, *is not limited to State Farm*, although State Farm is the only Defendant named in this action.  HealthCall has not named any other insurance companies in this action and, therefore, this Court cannot[11] issue a preliminary injunction that would bind any non-party insurance companies.  The requested preliminary injunction, by its terms, is also not limited to HealthCall.  Under Rule 65, however, this Court cannot issue a preliminary injunction against State Farm that would apply to other healthcare providers who are not parties to this action.

Even if the requested preliminary injunction were limited to State Farm and HealthCall (which it is not), it would still be impermissibly vague.  The requested preliminary injunction would enjoin "*any application or enforcement of M.C.L. 500.3157.*" (ECF No. 26) (emphasis added).  Such an injunction would impermissibly leave State Farm guessing as to what it is ordered to do or not do.

Significantly, Mich. Comp. Laws § 500.3157 contains fifteen different sections, and most

---

[11]Even if this Court had the authority or discretion to do so, it would not do so here, where HealthCall has sued other insurance companies in other cases.

of those sections contain numerous subsections. HealthCall seeks a preliminary injunction that

is not limited to § 3157(7), although that is the only subsection that is challenged in HealthCall's

complaint.[12] Yet the requested injunction would enjoin any application or enforcement of any

section (or subsection) of § 3157. As such, the preliminary injunction sought by HealthCall is

overly broad. *See Union Home Mortg. Corp.*, 31 F.4th at 364 ("An injunction is overly broad

when there is a risk that it restrains legal conduct, or the injunction prohibits illegal conduct that

is not the subject of the litigation or is not closely related to the conduct found to justify relief.").

And even if it was limited to § 3157(7) (which it is not), the requested injunction does not

specify what State Farm is ordered to do or not do. *Union Home Mortg. Corp., supra*.

Accordingly, as a threshold issue, this Court concludes that HealthCall has not

established that it is entitled to the preliminary injunction it has requested in this case because it

is impermissibly vague, overly broad, and purports to bind non-parties.

Moreover, it is not this Court's role to *sua sponte* attempt to fashion a proper injunction

that HealthCall could have sought in this case.[13] *See eg., Greenlaw v. United States*, 554 U.S.

237, 243-44 (2008) ("In our adversary system, in both civil and criminal cases, in the first

instance and on appeal, we follow the principle of party presentation. That is, we rely on the

_____

[12]In its *Motion for Preliminary Injunction,* HealthCall asserts that Section 3157 "leaves certain medical providers" with "a confiscatory rate freeze under Sections 3157(2) and (8)." (ECF No. 10 at 7). In addition, the heading on page 8 of its brief asserts that HealthCall has a strong likelihood of success because the "government-mandated rate reduction *and freeze*" are a confiscatory taking. (*Id*. at 8) (emphasis added). But no confiscatory "rate freeze" claim is pleaded *in HealthCall's operative complaint*. HealthCall cannot assert new claims in its Motion for Preliminary Injunction.

[13]That is especially so given that this Court flagged some of these issues during status conferences.

parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters

the parties present."; *see also United States v. Sineneng-Smith*, __ U.S. __, 140 S.Ct. 1575, 1579,

206 L.Ed.2d 866 (2020) ("[A]s a general rule, our system 'is designed around the premise that

[parties represented by competent counsel] know what is best for them, and are responsible for

advancing the facts and arguments entitling them to relief.'").

### III. HealthCall Has Also Not Shown A Strong Likelihood Of Success On The Merits Of Its Claims In This Case.

A key factor is whether the movant, here HealthCall, has shown a strong likelihood of

success on the merits of its claims in this case.

Notably, HealthCall's Amended Complaint in this action asserts claims based on two

different theories of relief and they are *mutually exclusive.* HealthCall may alternatively plead

such claims. But it can only prevail on *either* its first *or* second theory of relief, *not both*.

### A. Counts I & II – HealthCall's Claims Based On Its Primary Position That It Is *Not* A Section 3157(7) Provider

This motion is very unusual in that it asks the Court to grant the requested preliminary

injunction based upon Count III, which is pleaded in the alternative to Counts I & II, and only

comes into play if HealthCall's primary position is rejected and HealthCall is found to be a

Section 3157(7) provider. (*See* Am. Compl. at ¶ 120, wherein HealthCall alleges that "*if* it [i]s

found to be a Section 3157(7) provider, then that section cannot be enforced because it is an

unconstitutional taking without just compensation.") (emphasis in original). HealthCall's

primary position is that it is a "medical provider pursuant to Section 3157(2), not Section

3157(7)." (Am. Compl. at ¶ 119). And it "seeks a declaratory judgment that [HealthCall] is a

medical provider entitled to reimbursement as set forth in Section 3157(2), not Section 3157(7)."

(Am. Compl. at ¶ 162). If HealthCall can prevail as to Counts I and II in this case, then Count III is moot and it lacks standing to assert its takings claim.

HealthCall does not seem to appreciate that. Its Motion for Preliminary Injunction[14] asserts that it has a strong likelihood of success on the merits as to its alternative takings claim asserted in Count III of its Amended Complaint – without any discussion, analysis, or even mention, as to Counts I and II. Count III only comes into play *if* HealthCall is found to be Section 3157(7) provider and not a Section 3157(2) provider. This Court will not *sua sponte* explore the merits of HealthCall's claims based on its primary position in this case (Counts I & II), given that HealthCall has failed to do so.

This alone is a sufficient basis for finding that HealthCall has failed to establish a likelihood of success on the merits of Count III.

**B.     Count III – HealthCall's Alternative Takings Claim, If It Is Found To Be A Section 3157(7) Provider**

HealthCall brings this lawsuit pursuant to 42 U.S.C. § 1983 and Count III of HealthCall's Amended Complaint is titled, "Unconstitutional Taking In Violation Of Fifth And Fourteenth Amendments." In that count, HealthCall alleges:

> 164.    The Takings Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." US Const, Amend V.
>
> 165.    The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Loretto v Teleprompter Manhattan CATV Corp*, 458 US 419,

---

[14]At the evidentiary hearing, HealthCall continued to assert its primary position in this case, with Szirtes testifying that HealthCall is a Section 3157(2) provider and that the rate caps set forth in Section 3157(7) do not apply to it. And noticeably absent from HealthCall's proposed findings of fact and conclusions of law is a proposed finding that HealthCall is a Section 3157(7) provider.

421 (1982).

166.  Insurance companies are treated as state actors with respect to claims arising under the U.S. Constitution. *See Davey v Detroit Auto. Inter-Insurance Exchange*, 414 Mich 1, 3-4 (1982); *Shavers v Kelley*, 402 Mich 554, 597 (1978).

167.  A state-imposed price control unconstitutional under the Due Process Clause if it is arbitrary, discriminatory, or demonstrably irrelevant to a legitimate government purpose. *Pennell v City of San Jose*, 485 US 1, 11 (1988).

168.  Both on its face and as applied in this case, the amended Section 3157(7) is an unconstitutional confiscatory rate.

169.  If the rate does not afford sufficient compensation, the State has taken the use of property without paying just compensation and so violated the Fifth and Fourteenth Amendments.

170.  HealthCall has a property interest in the revenues it receives for the sale of its services to its patients and in the right to recover its cost of providing its service, including a reasonable return on investment.

171.  The amended Section 3157(7) arbitrarily reduces the amount of reimbursement that a healthcare provider can receive to 45% of what it charged as of January 1, 2019, regardless of the cost incurred to provide that service to its patient and regardless of whether these reduced reimbursements allow HealthCall to recover a constitutionally-protected rate of return on its investment.

172.  A 45% reduction is a confiscatory rate.

173.  The 45% reduction is arbitrary and discriminatory and demonstrably irrelevant to a legitimate purpose.

174.  Section 3157(7) provides no mechanism to guarantee a constitutionally required fair and reasonable return.

175.  The absence of a mechanism to guarantee that HealthCall and other similarly-situated medical providers receive the opportunity to earn a constitutionally adequate rate of return bears no relation to any legitimate governmental purpose and is arbitrary, capricious and discriminatory.

176.  Inadequate protections and procedures if the rate set in the Section (7) does not allow for a fair return; there is no express procedure or appeal provided for in the statute.

177.  HealthCall is entitled to injunctive relief HealthCall alleges that both on its face and as applied, Section 3157(7) violates its constitutional rights; if an injunction does not enjoin Defendant from enforcing Section 3157(7), HealthCall will be irreparably harmed; HealthCall has no adequate remedy at law to prevent State Farm from enforcing Section 3157; and if not enjoined by this Court, State Farm will continue to enforce Section 3157 in derogation of HealthCall's constitutional rights.

178.  Accordingly, injunctive relief is appropriate.

23

(Am. Compl. at 37-39).

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall private property be taken for public use, without just compensation.'" *Cedar Point Nursery v. Hassid*, __ U.S. __, 141 S.Ct. 2063, 2071, 210 L.Ed.2d 369 (2021).

The Fourteenth Amendment applies only to *state action*. *See Cooper v. United States Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) ("The Due Process Clause of the Fourteenth Amendment provides" '[N]or shall any State deprive any person of life, liberty, or property, without due process of law'" and "applies only to state action."). Section 1983 claims are also confined to those acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'").

While this "typically forecloses constitutional claims against private actors," such as State Farm, ''a private entity can be held to constitutional standards when its action so approximate state action that they may be fairly attributable to the state." *Faparusi v. Case Western Reserve Univ.,* 711 F. App'x 269, 275 (6th Cir. 2017) (quoting *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). The Sixth Circuit has "recognized four tests to determine whether a private party's 'challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Snodgrass-King Pediatic Dental Assocs. v. Dentaquest USA Ins. Co.*, 780 F. App'x 197, 204 (6th Cir. 2019) (quoting *Marie v. American Red Cross*, 771 F.3d

24

344, 362 (6th Cir. 2014)).  This issue is typically fact-intensive.  *Lindke v. Freed*, __ F.4th __,

2022 WL 2297875 at *2 n.1 (6th Cir. June 27, 2022).

As the plaintiff seeking to assert a § 1983 claim against a private company, HealthCall

bears the burden of proving that State Farm is a state actor under § 1983.  *See, eg., Groman v.*

*Township of Malapan*, 47 F.3d 628, 638 (3rd Cir. 1995) ("As the 'under color of state law'

requirement is a part of the prima facie case for § 1983, the plaintiff bears the burden of proof on

that issue.").  Thus, the "color of state law element is a *threshold issue*; there is no liability under

§ 1983 for those not acting under color of law."  *Id.* (emphasis added).

Nevertheless, HealthCall's motion and supporting brief gave this threshold issue

remarkably short shrift.  In its Amended Complaint, HealthCall makes a blanket assertion that

"Insurance companies are treated as state actors with respect to claims arising under the U.S.

Constitution."  (Am. Compl. at 37).  Then, in its motion, HealthCall addresses this issue in a

*single footnote* in its supporting brief:

> A medical provider can pursue its constitutional claims directly against an
> insurance company enforcing the underlying No-Fault law because insurers have
> been deemed state actors and an extension of the state. *Shavers v. Kelley*, 402
> Mich. 554, 597-599 (1978) ("In effect, insurance companies are the instruments
> through which the Legislature carries out a scheme of general welfare. This
> legislation goes beyond a grant of a monopoly or an attempt to regulate a utility;
> there exists 'a sufficiently close nexus between the State and the challenged
> action of the regulated entity so that the action of the [regulated entity] may fairly
> be treated as that of the State itself[.]") (citation omitted); *Davey v. Detroit Auto.*
> *Inter-Insurance Exchange*, 414 Mich. 1, 3-4 (1982) (suit by insured against
> insurer alleging the Legislature violated constitutional Due Process or equal
> protection in providing for cost-of-living increases for no-fault insurance work
> loss benefits under No-Fault Act but not for no-fault insurance survivors' loss
> benefits).

(Pl.'s Br. at 8 n.5).

Only after State Farm raised and briefed this threshold issue in its response to the

pending motion, did HealthCall substantively address it in its reply brief.  In that reply brief, HealthCall takes the position that State Farm should be deemed a state actor under the nexus test or, alternatively, under the state compulsion test.  (Pl.'s Reply Br., ECF No. 17, at 1-2).  This Court does not consider arguments raised for the first time in a reply brief.  *See, eg., Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021) ("[E]ven well-developed arguments raised for the first time in a reply brief come too late.").  That is because doing so effectively deprives the opposing party of the opportunity to respond to such arguments.

Then, when HealthCall filed its proposed findings of fact and conclusions of law after the briefing had concluded, it changed its position, making additional arguments for the first time: "Defendant State Farm is a state actor for purposes of the Fourteenth Amendment under the 'public function' test, the 'state compulsion' test, the 'nexus' test, *and* the 'joint action' test." (ECF No. 25 at ¶ 20) (emphasis added).

Under these circumstances, the Court finds that HealthCall failed to meet its burden of establishing that, for purposes of this motion, State Farm should be deemed a state actor.

In addition, even if State Farm were deemed to be a state actor, State Farm's challenges to the merits of HealthCall's takings claim appear to have merit.

The Takings Clause of the Fifth Amendment prohibits taking "private property . . . for public use, without just compensation."  U.S. Const. amend. V.  "Although '[t]he paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property,' the Supreme Court has recognized that 'government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster' so as to effect a regulatory taking."  *Baker Cnty. Med. Svs., Inc. v. U.S.*

*Atty. Gen.*, 763 F.3d 1274, 1276 (11th Cir. 2014) (quoting *Lingle v. Chevron U.S.A., Inc.*, 544

U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)).  That is what HealthCall alleges here –

a regulatory taking.

"A party challenging governmental action as an unconstitutional taking bears a

substantial burden." *Coalition for Gov't. Procurement v. Federal Prision Indus., Inc.*, 365 F.3d

435, 478 (6th Cir. 2004).

The Sixth Circuit has "articulated a two-part test in evaluating claims that a governmental

action constitutes a taking of private property without just compensation." *Puckett v. Lexington-*

*Fayette Urban Cty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016).  This test applies to cases like this

one, where a regulatory taking is alleged*.  Coalition for Gov't. Procurement,* 365 F.3d at 481.

"First, the court must examine whether the claimant has established a cognizable 'property

interest' for the purposes of the Just Compensation Clause." *Id*.  "Secondly, where a cognizable

property interest is implicated, the court must consider whether a taking occurred." *Id.*

HealthCall's Amended Complaint alleges that it "has a property interest in the revenues

it receives for the sale of its services to it patients," and appears to assert that it has a property

interest in the reimbursement rates it received prior to the challenged amendments to the statute.

(*See* Am. Compl. at ¶¶ 170-171).

State Farm persuasively argues that HealthCall cannot proceed with its takings claim

because "it is well established that, as a voluntary participant in a regulated system, HealthCall

has no legally protected property interest in continuing to receive a particular reimbursement

rate."  (Def.'s Br. at 14).  It argues:

> The existence of a legally protected property interest is an essential
> prerequisite to a takings claim. *Puckett,* 833 F.3d at 609. HealthCall's argument is

that the new fee schedule effects a taking as to HealthCall's entitlement to certain rates of reimbursement. But it is well established that, as a voluntary participant in a regulated system, HealthCall has no legally protected property interest in continuing to receive a particular reimbursement rate. *See Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013) ("Because participation in Medicaid is voluntary, however, providers do not have a property interest in a particular reimbursement rate."); *Erickson v. U.S. ex rel. HHS*, 67 F.3d 858, 862 (9th Cir. 1995) ("[P]laintiffs do not possess a property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs.").

HealthCall "can hardly expect that reimbursement rates will never change"— much less establish that it has a legally protected property interest in maintaining those rates at a certain level. *Managed Pharmacy Care* , 716 F.3d at 1252. HealthCall's takings claim therefore fails at the outset. *See Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 683 (6th Cir. 2004) ("[T]here is no taking if there is no private property interest in the first place.").

(*Id.*).

There is likewise a substantial line of authority standing for the proposition that there can be no regulatory taking where a service provider voluntarily participates in a price-regulated program or activity.  *See Garelick v. Sullivan*, 987 F.2d 913 (2d Cir. 1993) (Explaining that a "property owner must be legally compelled to engage in price-regulated activity for regulations to give rise to a taking," and "[b]y contrast, where a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking.").  *In Baker Cnty. Med. Svs*., *Inc*.,  the Eleventh Circuit also noted that a "long line of cases instructs that no taking occurs where a person or entity voluntarily participates in a regulated program or activity" stating:

We have said that "[i]t is well established that government price regulation does not constitute a taking of property where the regulated group is not required to participate in the regulated industry." *Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir.1986). *See also Yee v. City of Escondido, Cal*., 503 U.S. 519, 527, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("the Takings Clause requires compensation if the government authorizes a compelled physical invasion of property"); *Franklin Mem. Hosp. v. Harvey,* 575 F.3d 121, 129 (1st Cir.2009) ("Of course,

28

where a property owner voluntarily participates in a regulated program, there can be no unconstitutional taking."); *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir.1993) ("[W]here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking."); *Burditt v. U.S. Dept. of Health and Human Servs*., 934 F.2d 1362, 1376 (5th Cir.1991) (holding that physician could not challenge imposition of a penalty for violation of EMTALA under Takings Clause because, among other things, he voluntarily accepted "responsibility to facilitate a hospital's compliance with EMTALA"); *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir.1984) (finding no taking because "Minnesota nursing homes ... have freedom to decide whether to remain in business and thus subject themselves voluntarily to the limits imposed by Minnesota on the return they obtain from investment of their assets in nursing home operation"); *St. Francis Hosp. Ctr. v. Heckler*, 714 F.2d 872, 884 (7th Cir.1983) (holding that diminished market value does not constitute a taking where plaintiffs "retain full rights and control over their net investment").

*Baker Cnty. Med. Svs., Inc. v. U.S. Atty. Gen*., 763 F.3d 1274, 1276 (11th Cir. 2014). Numerous other courts have concluded likewise. *See, e.g., Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir. 1986) ("It is well established that government price regulation does not constitute a taking of property where the regulated group is not required to participate in the regulated industry" and collecting cases); *Minnesota Assoc. of Health Care Fac., Inc. v. Minnesota Dep't of Public Welfare*, 742 F.2d 442 (8th Cir. 1984) (Affirming denial of preliminary injunction and explaining that cases concerning public utilities are inapposite because the voluntariness of a nursing home's participation in the Medicaid program forecloses the possibility that the statute could constitute a taking.); *Key Med. Supply, Inc. v. Burwell,* 764 F.3d 955 (2014) (Finding takings claim to be without merit where provider's decision to participate in Medicaid was voluntary); *Managed Pharmacy Care v. Sebelius*, 716 F.3d at 1252 (same); *Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121, 129-30 (1st Cir. 2009) (holding there can be no unconstitutional taking where a provider "voluntarily participates in a regulated program."). This line of authority includes at least one decision from a district court within the Sixth Circuit. *See*

*Christman v. Grays*, 2005 WL 3088529 at *5 (S.D. Ohio 2005) (Rejecting Fifth Amendment takings claim based on *Garelick* and *Whitney, supra*).

This is not a universal position and HealthCall has identified some cases wherein a contrary conclusion was reached. None of them, however, appear analogous to the facts and circumstances presented here. And HealthCall has not identified any Sixth Circuit decisions that support HealthCall's position that a service provider who voluntarily participates in a price-regulated program can establish a takings claim.

Accordingly, for all of these reasons, the Court concludes that HealthCall has not established a substantial likelihood of success on the merits as to its takings claim.

## IV.   HealthCall Has Not Shown That It Will Suffer Irreparable Injury Without The Requested Injunction.

Courts have held that a "plaintiff can demonstrate that a denial if an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). As discussed above, however, this Court concludes that HealthCall has not established that it is likely to prevail on its takings claim.

As such, its argument that it "is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit" and this Court must therefore examine whether HealthCall can establish irreparable harm in some other manner. *Overstreet,* 305 F.3d at 578-79.

A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. *Id.* Thus, "[a]s a general matter, a 'plaintiff's harm from the denial of preliminary injunction' does not count as 'irreparable' if it is, or can be, 'fully

30

compensable by monetary damages.'" *St. Luke's Hosp. v. ProMedica Health Sys., Inc.*, 8 F.4th 479, 489 (6th Cir. 2021) (quoting *Overstreet, supra*).

Here, although HealthCall asserts financial injuries in this case, its brief contends that it can nevertheless establish irreparable harm because "'[t]he pending loss or financial ruin of [movant's] business constitutes irreparable injury.'" (Pl.'s Br. at 21, quoting *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995)).

It is true that "courts have recognized that the irreparable harm element of the preliminary injunction framework may be satisfied on a showing that, absent an injunction, financial hardship would be so severe that it would cause the moving entity to be 'completely wiped out,' thereby rendering 'a later judgment on the merits meaningless.'" *Total Toxicology Labs, LLC v. Azar*, 2019 WL 7046843 (E.D. Mich. 2019) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978)).

State Farm does not dispute that the impending financial ruin of a party's business without the requested injunction can constitute irreparable injury. Rather, it contends that HealthCall has not supported its assertion with sufficient evidence to show it is actually facing impending financial ruin without the requested injunction. The Court agrees.

Any preliminary injunction issued in this case would *only bind State Farm*. It could not bind any other insurance companies that are not parties to this case. *See* Fed. R. Civ. P. 65(d)(2).[15] Significantly, only two of HealthCall's no-fault patients are insured by State Farm.

_____

[15]Fed. R. Civ. P. 65(d)(2) specifies who may be bound by a Court's preliminary injunction and provides that the "order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in rule 65(d)(2)(A) or (B). "Simply put, the Court cannot bind individuals who

All of its remaining 23 or so no-fault patients are insured by other companies that are not parties to this case.

Moreover,"[t]o merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *D.T.,* 942 F.3d at 327 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

Here, HealthCall's Amended Complaint alleges that if there are significant reimbursement rate reductions as to the services it provides to no-fault patients, that would be "unsustainable and would force HealthCall to operate at a loss (and *eventually*, become insolvent)."  (Am. Compl. at ¶ 64) (emphasis added).  HealthCall's brief asserts the same.  It has to show more than that.  Otherwise, there is no need to grant injunctive relief *now*, as opposed to at the conclusion of the case.  *D.T. Sumner Cty. Sch.,* 942 F.3d 324, 327 (6th Cir. 2019).

This Court concludes that HealthCall has not shown that it is at imminent risk of insolvency if its requested injunction, that would only bind State Farm, is not issued by this Court.[16]

### CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED;

IT IS FURTHER ORDERED that State Farm's Request For Judicial Notice (ECF No. 16-5) is DENIED, State Farm's Motion to Quash Plaintiff's Subpoenas (ECF No. 38) is

---

are not mentioned in Rule 65(d) to an injunction."  *International Brotherhood of Teamsters Local 651 v. Philbeck*, 2019 WL 7501810 at *2 (E.D. Ky. 2019).

[16]Given this Court's rulings, the Court need not address the remaining factors.

DENIED AS MOOT, and Plaintiff's Motion To Strike The Testimony of Gary Nayh (ECF No.

45) is DENIED AS MOOT.

      IT IS SO ORDERED.

                          s/Sean F. Cox
                          Sean F. Cox
                          United States District Judge

Dated:  August 8, 2022